**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ASUNCION RODRIGUEZ, | CASE NO. CV F 04-6700 OWW LJO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS ON SOCIAL SECURITY COMPLAINT** |
| vs. | (Docs. 17, 23, 24.) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Asuncion Rodriguez ("plaintiff") seeks this Court's review of an administrative law judge's ("ALJ's") decision that plaintiff is neither disabled nor eligible for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1382c. Based on review of the Administrative Record ("AR") and the papers of plaintiff and defendant Jo Anne B. Barnhart, Commissioner of Social Security ("Commissioner"), this Court RECOMMENDS to DENY plaintiff's request to reverse the Commissioner's decision to deny plaintiff SSI or to remand for further proceedings.

1

# BACKGROUND

## Personal Background

Plaintiff is age 48 and has a fifth grade education and past relevant work as a factory machine operator, cannery packer and farm laborer.  (AR 92, 406.)

## Administrative Proceedings

On April 5, 2002, plaintiff protectively filed her SSI application to claim disability since July 13, 2001 due to several fractures, punctured lung and liver, dizziness, headaches, and neck and heart problems from a motor vehicle accident.  (AR 82, 90-91.)  With its July 17, 2002 Notice of Disapproved Claims, the Social Security Administration ("SSA") denied plaintiff's claim and determined that plaintiff's condition is not severe enough to prevent her to work.  (AR 65-68.)  On August 23, 2002, plaintiff filed her Request for Reconsideration to claim that she is unable to bend, stand, or sit for a while and lost strength in her hands.  (AR 69.)  With its December 20, 2002 Notice of Reconsideration, SSA denied plaintiff's claim and again determined that her condition is not severe enough to prevent her to work.  (AR 70-73.)

On January 27, 2003, plaintiff filed her Request for Hearing by Administrative Law Judge to claim she is "unable to return to work."  (AR 74.)  After a January 7, 2004 hearing, the ALJ issued her June 22, 2004 decision to conclude that plaintiff is able to perform her past relevant work and is not disabled.  (AR 16, 19-20.)

Plaintiff submitted to SSA's Appeals Council her August 2, 2004 Request for Review of Hearing Decision.  (AR 11-12.)  On November 6, 2004, the Appeals Council denied plaintiff's request for review to render the ALJ's June 22, 2004 decision as the Commissioner's final decision subject to this Court's review.  (AR 4-6.)

## Medical History And Records Review

Plaintiff has treated for various issues, including several fractures, punctured lung and liver, dizziness, headaches, and neck and heart problems.

### *Saint Agnes Medical Center*

On October 19, 1990 and again on May 24, 1991 at Saint Agnes Medical Center, Kevin Boran, M.D. ("Dr. Boran"), performed catheterization procedures on the plaintiff and diagnosed plaintiff with

2

1  mitral stenosis. (AR 387, 391.)  On June 13, 1991, W. Edward Hanks, M.D. ("Dr. Hanks"), performed

2  a mitral (balloon) valvuloplasty on the plaintiff. (AR 18, 377-386.)   Dr. Hanks found that the

3  valvuloplasty was successful with improved valve output, that left heart pressures were normal, and that

4  there was no significant mitral regurgitation before or after procedure. (AR 378.)

5                              *Kaweah Delta Health Care District*

6           After a July 13, 2001 motor vehicle accident, plaintiff treated at Kaweah Delta Health Care

7  District for injuries.  She had suffered multiple rib and pelvic fractures, a finger fracture, post-cerebral

8  concussion, and a non-bleeding liver laceration. (AR 177, 216, 310-311.)  A computed tomography scan

9  revealed mild rib and thoracic fractures but neither spinal fractures nor solid organ injuries. (AR 308,

10  309, 311.)

11          On July 18, 2001, plaintiff was admitted to the Cypress Rehabilitation Center for an inpatient

12  rehabilitation program, but after complaining of transient chest tightness, plaintiff was sent to Kaweah

13  Delta District Hospital on July 22, 2001 for management of unstable angina. (AR 125-126, 217.)

14  Plaintiff was assessed with a rapid response atrial fibrillation that medications did not resolve. (AR 151.)

15  However, on July 23, 2001, plaintiff regained sinus rhythm after being cardioverted by Harry R. Lively,

16  M.D. ("Dr. Lively"). (AR 151.)

17          On July 22, 2001, plaintiff was readmitted to the Cypress Rehabilitation Center.  (AR 120.)  On

18  August 2, 2002, the day plaintiff was discharged, David R. Cooper's, M.D. ("Dr. Cooper's"), notes

19  reflect that plaintiff's initial post-traumatic amnesia was resolved, that she is up and about with no

20  disruption in her intact pelvic ring, that her finger is healing and ready to begin range of motion

21  exercises, that her cardiac status is stable, but that plaintiff is still having problems with post-traumatic

22  stress disorder ("PTSD"). (AR 120-121.) Dr. Cooper recommended no follow up therapy but suggested

23  to follow up with mental health for plaintiff's PTSD. (AR 120-121.)

24          October 31, 2001 x-rays of plaintiff's pelvis revealed that nondisplaced fractures had healed, but

25  there was a mild residual deformity of the inferior pubic ramus. (AR 351.)  An August 22, 2003 chest

26  x-ray was described as "normal." (AR 350.)  September 20, 2003 x-rays of plaintiff's lower back

27  indicated there was "[m]inimal right lateral scoliosis[,]" but "otherwise normal." (AR 349.)

28  / / /

### *Allen McGee, D.C., Treating Chiropractor*

Plaintiff treated with chiropractor Allen L. McGee, D.C. ("Dr. McGee") during October 8, 2001 to April 18, 2002 for six visits for injuries from her July 13, 2001 automobile accident. (AR 320-322, 324.) In his May 15, 2002 letter, Dr. McGee indicated he "doubts [plaintiff] will be able for much work at all in the future because ot [sic] thei [sic] injuries." (AR 319.) However, he referred to the plaintiff's treatment at Kaweah Delta Hospital to noted that "their reports will help determine [plaintiff's] ability." (AR 319.)

### *San Joaquin Valley Medical Clinic*

Beginning January 16, 2002, plaintiff treated at San Joaquin Valley Medical Clinic  for routine medical treatment as well as chest, jaw and throat pain, neuralgia, dizziness, restlessness and fever. (AR 326-331.) She was prescribed Lipitor. (AR 326, 329-330.) During June 6, 2002 to March 31, 2003, plaintiff sought treatment eight times for chest pain, head problems, fever and nocturnal perspiration. (AR 365-376.)

### *Kevin Boran, M.D., Treating Physician*

On February 28, 2002, plaintiff underwent a two-dimensional, M-mode echocardiogram performed by Dr. Boran. (AR 315.) According to Dr. Boran, the echocardiogram indicated "a rheumatic mitral valve with only mild mitral stenosis and mild mitral regurgitation." (AR 315.) Dr. Boran noted that plaintiff has rheumatic mitral valve disease and that the previous commissurotomy plaintiff underwent "appears to be holding up nicely." (AR 316.) Dr. Boran's notes further reflect that he was uncertain as to the etiology of her present chest pain. (AR 316.)

### *Tomas Rios, M.D., Consultative Physician*

On July 2, 2002, board certified internist Thomas Rios, M.D. ("Dr. Rios"), conducted a comprehensive internal medicine examination. (AR 332.) Dr. Rios noted that plaintiff has no nerve root irritation and that limits on range of motion are due to pain. (AR 334.) Dr. Rios opined that plaintiff's allegation of labor restricting complications from the car accident are significant only in regard to tenderness along the lumbar spine without associated spasms. (AR 334.) Dr. Rios further noted deformities of the left index finger but found plaintiff's grip strength was "strong and normal" as well as "adequate." (AR 334.) Dr. Rios observed that plaintiff "moves about the room with ease" and her

"gait pattern does not appear to be significantly compromised." (AR 333, 335.)  Dr. Rios also noted plaintiff has 20/25 vision in both eyes after performing a Snellen eye exam. (AR 333.)  Dr. Rios assessed plaintiff with postural limitations on frequent bending, stooping, climbing, crawling, and crouching. (AR 332-335.)

### *Non-Examining Physicians*

Sadda Reddy, M.D. ("Dr. Reddy"), a California Disability Determination Services ("DDS") physician, completed a July 12, 2002 Physical Residual Functional Capacity Assessment to note that plaintiff is able to: (1) lift/carry 50 pounds occasionally and 25 pounds frequently; (2) stand/walk about six hours in an eight-hour workday; (3) sit about six hours in an eight-hour workday; (4) push/pull subject to the lift/carry limitations; (5) occasionally climb, stoop, crouch and crawl; and (6) frequently balance and kneel.  (AR 339-340.)  Dr. Reddy noted neither manipulative, visual, communicative nor environmental limitations.  (AR 341-342.)  Dr. Reddy found that the opinion of Dr. McGee, plaintiff's chiropractor, that plaintiff could not work too much in the future due to the extent of her injuries, was not reliable because it was unsupported by the medical evidence. (AR 319, 346-347.)  Dr. Reddy indicated that plaintiff could perform "medium" work.  On December 20, 2002, James V. Glasser, M.D. ("Dr. Glasser"), a DDS physician, affirmed Dr. Reddy's assessment. (AR 340, 347, 345).

### *Orosi Family Medical Care*

During 1997- 2003, plaintiff treated at Orosi Family Medical Care for various medical concerns such as anemia, hyperlipidemia, vertigo, depression, chronic pain and blurred vision. (AR 352-364.)  On December 9, 2003, physician assistant Benito Rivas ("Mr. Rivas") filled out a Complete Medical Report (Physical) to indicate plaintiff has depression, chronic pain in the hips/pelvis, and arthritis. (AR 353.)  Mr. Rivas noted that the fractures to plaintiff's pelvis are "well healed" and her overall prognosis was "fair[,]" however, he also noted plaintiff's symptoms are inadequately controlled by the treatment. (AR 353.)

### *Medications*

Plaintiff's medications have included Advil, Excedrin, Tonopan, Cordarone, Ecotrin, Fibercon, Lanoxin, Norco, Xanax, Antivert, Aspirin, Ferrous Sulfate, Indocin, Lipitor, Nitroglycerin, Tylenol with Codeine, Zoloft, Dramamine and Meclizine. (AR 117, 121, 332, 420.)

**Plaintiff's Activities And Testimony**

***Questionnaires And Statements***

Plaintiff completed an April 22, 2002 Disability Report Adult to note she is 5-foot-2, weighs 174 pounds, and has a fifth grade education, but can neither read, speak nor write more than her name in English. (AR 90, 97.)  Plaintiff's ability to work, stand, sit, breathe, grip, bend, kneel and squat are limited by plaintiff's fractured pelvis, finger and ribs, punctured lung and liver, heart and artery problems, and a concussion.  (AR 91.)  From February 2000 to June 2001, plaintiff worked as a machine operator and was required to lift objects weighing up to 20 pounds frequently. (AR 92.)  Plaintiff's injuries resulting from a July 13, 2001 motor vehicle accident prevent her to work. (AR 91, 93.)

Plaintiff completed a May 13, 2002 work history report to note that she worked as a machine operator during February 1999 to June 2001, and such work comprised lifting and carrying 20 pound boxes 15 feet before placing them on pallets. (AR 100-101.)  Plaintiff worked five eight-hour days and performed: (1) walking, standing, crouching, and either writing, typing or handling small objects for eight hours; (2) stooping for six hours; (3) handling, grabbing or grasping big objects for four hours; and (4) climbing for two hours. (AR 101.)  During June 1996 to August 1996, plaintiff worked as a cannery packer where her work comprised lifting 20 pound boxes of peaches and cutting peaches in half before placing them on a belt. (AR 100, 102.)  Plaintiff worked five seven-to-eight hour days a week, and her work comprised: (1) standing, and either handling, grabbing or grasping big objects for eight hours; and (2) walking for an hour. (AR 102.)

Plaintiff completed a August 16, 2002 Reconsideration Disability Report to note her inability to stand, sit or grip along with increased headaches, dizziness, and back pain since filing her claim. (AR 107.)  Plaintiff is nervous and sweats when driving due to her fear of being in another accident. (AR 107.)  Plaintiff uses Tylenol and Vicodin to control the pain. (AR 108.)  Plaintiff's pain causes difficulty to put on shoes and socks, get in and out of a car, perform household chores, and walk. (AR 109.)  Plaintiff is unable to grocery shop, stand or sit for long, or walk more than 10-15 minutes.  (AR 109.)  Plaintiff has difficulty to breathe and to sit because of bending pain. (AR 109.)

***Plaintiff's ALJ Hearing Testimony***

Plaintiff testified at the January 7, 2004 ALJ hearing that she attended school in Mexico for five

years and is able to read and write in Spanish and to read and write "[a] little bit" in English. (AR 407.)
In English, plaintiff is able to read half of a first grade book. (AR 409.)  At home, plaintiff speaks
Spanish, but watches television in English and understands "sometimes and sometimes not." (AR 409-
410.)  Plaintiff's sons helped her to complete Social Security forms and a Spanish interpreter made the
ALJ hearing possible.  Plaintiff passed the test to become a citizen in English. (AR 410.)

Plaintiff last worked operating a machine at a plastics manufacturer for one year and two months
and stopped working because of her motor vehicle accident. (AR 431-432.)  Plaintiff's job activities
entailed standing all day by the machine, opening the door, taking parts out, and fixing them. (AR 431.)
The heaviest item plaintiff lifted was 50 pounds, and plaintiff was required to lift all day, "every
minute." (AR 431-432.)  Before her machine operator job, plaintiff worked seasonally picking grapes
and oranges, which required her to bend down to pick up large 30-pound bags of oranges. (AR 432,
434.)  Additionally, plaintiff worked in a packing house, where she was required to stand, load and push
15-to-20 pound boxes but performed no lifting. (AR 433-434.)

Plaintiff is unable to perform her previous jobs because she is unable to bend down or squat,
becomes dizzy, and experiences hip and left hand pain. (AR 412-413.)  Plaintiff's past work required
her to lift more than 20 pounds and to mop floors, but plaintiff lacks hand strength to wring a mop. (AR
418-419.)

Plaintiff's headaches occur three to four times per week, sometimes lasting the whole day, with
pills unable to relieve the pain. (AR 413.)  Plaintiff is unable to stand on her feet or sit for more than a
30 minutes because of hip problems. (AR 414-415.)  Plaintiff is able to lift about 20 pounds, but not
"heavy things." (AR 415, 417.)

Plaintiff becomes dizzy two to three times per week but Meclizine and Dramamine control her
dizziness. (AR 419-421.) Plaintiff first testified that she does not take Meclizine regularly, skipping one
or two days a week, but later testified she only takes Meclizine when she is dizzy and that within 5-10
minutes, the dizziness ceases. (AR 421-423.)  After taking Meclizine, plaintiff lies down to sleep, and
her headaches has lapsed when she awakes. (AR 423-424.)  Plaintiff acknowledged that her doctor
prescribed Meclizine to be taken daily. (AR 422.)

Plaintiff testified that she takes Nitrostat upon chest pain about every two to three months, and

the medication relieves the pain quickly.  (AR 425.)  On average, plaintiff's heart beats fast about three

to four days out of the week for seconds at a time.  (AR 425.)  Plaintiff gets tired more than she had five

years ago and must lie down once or twice a day for about half an hour or hour each time to rest. (AR

425-426.)

Plaintiff's ability to work is limited by depression, which limits ability to concentrate to require

medication for the past three months. (AR 426-427.)  Plaintiff is able to concentrate for 20-30 minutes

when watching television.  (AR 427.)  Two or three times a week, plaintiff becomes upset thinking about

her motor vehicle accident. (AR 428.)

Plaintiff is able  to do dishes, cook for herself and her husband once or twice a day, sweep, pick

things off the ground with a mechanical device, and do her and her husband's laundry once or twice a

week. (AR 419, 429.)  Plaintiff can bathe herself without difficulty but has problems bending down

when she is dressing. (AR 429.)  Plaintiff attends church on Sundays but socializes little because of her

difficulty walking. (AR 430.)  Plaintiff has a driver's license, but her fear of another motor vehicle

accident prevents her from driving more than once a month. (AR 411-412.)

### *Vocational Expert's Testimony*

Vocational expert Cheryl Chandler ("Ms. Chandler") testified at the January 7, 2004 hearing that

plaintiff's past relevant occupation as a machine operator is "medium" per the Dictionary of

Occupational Titles, but plaintiff described it unskilled and "heavy [specific vocational preparation

('SVP 2')]." (AR 436.) Ms. Chandler characterized the fieldwork as medium, unskilled and SVP 2, and

the packinghouse job as light, unskilled and SVP 2. (AR 436.)

### **The ALJ's Findings**

In her June 22, 2004 decision, the ALJ identified the specific issue as whether plaintiff is under

a disability, defined as inability to engage in substantial gainful activity due to a medically determinable

physical or mental impairment expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months. (AR 16); *see* 42 U.S.C. § 1382c(a).  In concluding

plaintiff can perform her past relevant work, is not disabled and thus is ineligible for SSI (AR 19-20),

the ALJ found:

    1.    Plaintiff has severe impairments, including multiple fractures and injuries due to a motor

8

1    vehicle accident, mild mitral stenosis and mild mitral regurgitation and arthralgias but

2    lacks an impairment or combination of impairments listed in, or medically equal to, one

3    in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of

4    Impairments").

5    2.    Plaintiff's allegations were generally credible but not to the extent to establish disability.

6    3.    Plaintiff has the residual functional capacity to perform work-related activities except for

7    work involving greater exertion than light work.

8    4.    Plaintiff's past relevant work as packing house/cannery worker did not require

9    performance of work-related activities precluded by the above limitation. 20 C.F.R. §

10    416.965.

11    5.    Plaintiff's impairments do not prevent plaintiff to perform her past relevant work.  (AR

12    19.)

13    **DISCUSSION**

14    **Standard Of Review**

15    Congress has provided limited judicial review of a Commissioner's decision made through an

16    ALJ.  *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if

17    supported by substantial evidence, shall be conclusive . . .).  A court must uphold the Commissioner's

18    decision, made through an ALJ, when the determination is not based on legal error and is supported by

19    substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of

20    Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant

21    could perform light work contrary to treating physician's findings).[1]  Substantial evidence is "more than

22    a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420 (1971), but less than a

23    preponderance,  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  Substantial

24    evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."

25    *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420; *Sandgathe*, 108 F.3d at 980.

26

27    [1]    "The district court properly affirms the Commissioner's decision denying benefits if it is supported by
substantial evidence and based on the application of correct legal standards." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th

28    Cir. 1997).

9

1        The record as a whole must be considered, weighing both the evidence that supports and detracts

2   from the Commissioner's conclusion. *Sandgathe*, 108 F.3d at 980; *Jones,* 760 F.2d at 995.  If there is

3   substantial evidence to support the administrative finding, or if there is conflicting evidence that will

4   support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.

5   *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  If the evidence is susceptible to more than

6   one rational interpretation, the court may not substitute its judgment for that of the Commissioner.

7   *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th

8   Cir. 1999).

9        This Court reviews the ALJ's decision pursuant to 42 U.S.C. § 405(g) to determine whether it

10  is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

11  whole.  *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).  "A decision of the ALJ will not be

12  reversed for errors that are harmless."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

13       Plaintiff bears the burden to prove that she is disabled which requires presentation of "complete

14  and detailed objective medical reports of her condition from licensed medical professionals." *Meanel*

15  *v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

16  "Failure to prove disability justifies denial of benefits."  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th

17  Cir. 2005); *see Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122, 116

18  S.Ct. 1356 (1996).   Plaintiff must furnish medical and other evidence about plaintiff's medical

19  impairments. 20 C.F.R. §§ 404.1512(a), 416.912(a); ("[Y]ou must bring to our attention everything that

20  shows that you are blind or disabled."); 20 C.F.R. §§ 404.1514, 416.914 ("We need specific medical

21  evidence to determine whether you are disabled or blind.  You are responsible for providing that

22  evidence.")

23       Here, plaintiff claims disability since July 13, 2001 primarily due to injuries that arose from a

24  motor vehicle accident as well as heart problems.  (AR 91-93.)

25       With the above standards in mind, this Court turns to plaintiff's criticism of the ALJ's June 22,

26  2004 decision.

27                         **Development Of Record**

28       Plaintiff faults the ALJ for not properly developing record as to plaintiff's depression.  The

10

1   Commissioner responds that plaintiff failed to carry her burden to showing disability.

2      "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence

3   or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*,

4   276 F.3d 453, 460 (9th Cir. 2001).   Here, there is no ambiguity or inadequacy in the record as to

5   plaintiff's depression because, as the ALJ noted, Mr. Rivas assessed depression and opined that the

6   medications were inadequate to control plaintiff's symptoms but listed her prognosis as "'fair' and failed

7   to restrict plaintiff to a residual functional capacity for less than light work." (AR 18, 353.)   Further,

8   plaintiff cites to no specific ambiguity or inadequacy and suggests that the ALJ should have ordered a

9   mental health consultative examination or assessment.   At the ALJ hearing, plaintiff's counsel

10  mentioned plaintiff may have seen a psychologist "sometime in late December." (AR 402-403.)   The

11  ALJ fulfilled her duty to develop the record by holding the record open for 30 days for plaintiff to

12  provide additional medical records. (AR 403-405.)   Plaintiff fails to demonstrate grounds to further

13  develop the record.

14                                    **New Evidence**

15     Plaintiff contends the ALJ did not properly consider all medical evidence and submitted with her

16  opening brief additional 2003 records of Randall J. Burke, M.D. ("Dr. Burke"), which reflect plaintiff's

17  treatment for depression.   The Commissioner notes that the additional evidence is neither new nor

18  material.

19     A remand is appropriate under 42 U.S.C. § 405(g) "where the new evidence is material and there

20  is good cause for the failure to incorporate such evidence in the record in a prior proceeding." *Booz v.*

21  *Secretary of Health and Human Services*, 734 F.2d 1378, 1380 (9th Cir. 1984); *Burton v. Heckler*, 724

22  F.2d 1415, 1417 (9th Cir. 1984).   In 1980, Congress amended 42 U.S.C. § 405(g) to add a materiality

23  requirement "at least in part to limit the court's ability to remand cases for consideration of new

24  evidence." *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982) (citing *Carter v. Schweiker*, 649 F.2d

25  937, 942 (2nd Cir. 1981)).

26     "To meet the materiality requirement, the new evidence offered must bear directly and

27  substantially on the matter in dispute." *Burton*, 724 F.2d at 1417.   "[E]vidence is sufficiently material

28  to require a remand, 'only where there is a *reasonable possibility* that the new evidence would have

1    changed the outcome of the [Commissioner's] determination had it been before him.'" *Booz*, 734 F.2d

2    at 1380 (quoting and adopting *Dorsey v. Heckler*, 702 F.2d 597, 604-605 (5th Cir. 1983)) (italics in

3    original).  "The good cause requirement often is liberally applied where . . . there is no indication that

4    a remand for consideration of new evidence will result in prejudice to the [Commissioner]."  *Burton*,

5    724 F.2d at 1417-1418.  "If new information surfaces after the Secretary's final decision and the claimant

6    could not have obtained that evidence at the time of the administrative proceeding, the good cause

7    requirement is satisfied." *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)

8         Rather than explain how the additional records are material and their potential effect on the

9    ALJ's decision, plaintiff claims the additional records "support the fact that there should have been

10   development by the ALJ."  This  Court is not in a position to speculate as to the materiality of the new

11   evidence.  Also, plaintiff does not explain why Dr. Burke's April 6, 2003 medical report could not have

12   been obtained at the time of the January 7, 2004 ALJ and thus fails to meet the good clause requirement.

13   *See Key*, 754 F.2d at 1551.  Plaintiff fails to demonstrate ALJ error to consider all medical evidence.

14                                    **<u>Residual Functional Capacity</u>**

15        The ALJ found that plaintiff has residual functional capacity for light exertional work. (AR 18.)

16   Plaintiff contends that the ALJ failed to review the evidence fully and that the evidence supports a

17   finding that "only a limited range of sedentary work can be performed."

18        To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial

19   gainful activity due to a medically determinable physical or mental impairment which has lasted or can

20   be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382(a)(3)(A).

21        The Commissioner has final responsibility to determine a claimant's residual functional capacity.

22   20 C.F.R. §§ 404.1546, 416.946.  "Residual functional capacity" is the phrase used by the Commissioner

23   to denote a claimant's ability to perform work-related tasks despite his physical or mental impairments.

24   20 C.F.R. §§ 404.1545(a), 416.945(a).  Categories of residual functional capacity include sedentary,

25   light, medium, heavy and very heavy work.  20 C.F.R. §§ 404.1567, 416.967.

26        Plaintiff claims the ALJ ignored her postural limitations.  The ALJ, after making detailed review

27   of the medical evidence, concluded that the consensus of medical opinion was that plaintiff retains the

28   ability to perform light work. (AR 18.)  The only opinion to the contrary was that of chiropractor Dr.

                                                  12

1   McGee, a non-medical source, who doubted plaintiff's ability to work in the future but deferred to

2   plaintiff's physicians. *See* 20 C.F.R. §§ 404.1513(a), (e).  The ALJ's decision included a detailed

3   residual functional capacity assessment to address each relevant exertional and nonexertional category.

4   The ALJ found the plaintiff has a "combination of impairments, resulting in both exertional and

5   nonexertional limitations" and noted Dr. Reddy's conclusion that plaintiff is able to perform medium

6   work with postural limitations. (AR 18.)  The ALJ, viewing the evidence in the light most favorable to

7   the plaintiff, downgraded plaintiff's level of exertion from medium to light. (AR 18.); *see* 20 C.F.R. §§

8   404.1567(c),  416.967(c) ("If someone can do medium work, we determine that he or she can also do

9   sedentary and light work.")  "Light work involves lifting no more than 20 pounds at a time with frequent

10  lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).

11  Plaintiff fails to demonstrate that restrictions of occasional climbing, stooping, crouching and crawling,

12  and frequent balancing and kneeling preclude her to perform light work.   Contrary to plaintiff's

13  assertion, the ALJ made the requisite factual findings, based on the medical evidence and supported by

14  substantial evidence,  to conclude plaintiff retains the capacity to perform light work.

15          Plaintiff also argues that ALJ failed to review plaintiff's rheumatic valve disease, finger

16  deformity and vertigo.  The ALJ addressed plaintiff's rheumatic valve disease by referring to Dr. Boran's

17  assessment that there was "only mild mitral stenosis and mild mitral regurgitation" and that the

18  plaintiff's status post commissurotomy was "'holding up rather nicely,' with an echocardiogram not

19  showing evidence of restenosis or significant mitral regurgitation." (AR 17, 315-316.)  The ALJ

20  addressed plaintiff's finger deformity by referring to Dr. Rios' opinion that "[w]hile there where some

21  deformities in the left index finger, grip strength was adequate.  Fine and gross finger manipulation

22  remained intact . . ." (AR 17, 334-335.)  The ALJ also referred to Dr. Rios' notation from his

23  consultative examination that has "occasional bouts of headache and dizziness, but no vertigo during

24  the examination and no orthostatic symptoms." (AR 17, 335.)  The ALJ further noted plaintiff "takes

25  medication for dizziness only when she becomes dizzy, although she was advised to take is regularly."

26  (AR 18, 421, 422.)  Despite plaintiff's assertion to the contrary, the ALJ reviewed the evidence fully and

27  properly determined the allegations were not disabling, as supported by substantial evidence.

28          Plaintiff argues that the ALJ failed to review her PTSD and fibromyalgia.  The ALJ noted that

13

plaintiff was advised to "follow-up with mental health for [PTSD]" and that "progress notes from San Joaquin Valley Medical Clinic document routine medical treatment and monitoring of complaints of neuralgia and other subjective complaints," including fibromyalgia. (AR 17, 121, 330, 368.)  The ALJ properly excluded the medical opinions as to plaintiff's residual functional capacity which were brief, conclusory with little in the way of clinical findings. *See Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (an ALJ may reject a treating physician's opinion if it is brief and conclusory in form with little in the way of clinical findings to support its conclusion).  Plaintiff fails to substantiate her claim that the ALJ failed to review the evidence favorable to the plaintiff.

The plaintiff also claims the ALJ improperly ignored and rejected plaintiff's anemia and blurred vision and that when considered they add further visual limitations.  The ALJ properly did not discuss plaintiff's claim of anemia because it was neither significant nor probative. *See Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-1395 (9th Cir. 1984) (the Secretary must explain why significant probative evidence has been rejected, but need not discuss all evidence presented to her).  Mr. Rivas' notes regarding plaintiff's vision had little in the way of objective findings and appear to be solely based on plaintiff's subjective complaints. *See Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (a physician's opinion of disability premised to a large extent upon claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted). The ALJ noted that plaintiff "watches TV in English such as 'Cops.'" (AR 18, 409.)  The ALJ properly considered plaintiff's testimony that "she cooks for herself and washes dishes, and cooks for the family two times a day." (AR 18, 419, 428-429.)  In addition, the ALJ noted plaintiff's testimony that "[s]he does some laundry" and plaintiff "was capable of helping her son with his first grade homework." (AR 18-19, 429.) Here, the ALJ properly determined such activities to be "inconsistent with disability, and consistent with the ability to perform limited work activities." (AR 19.)  Furthermore, the record shows that Dr. Rios, after performing a Snellen eye exam, found plaintiff 20/25 vision in plaintiff's eyes. (AR 333.) Substantial evidence does not support a more restrictive residual functional capacity based on visual limitations.

Plaintiff also asserts the ALJ failed to review her literacy.  Contrary to plaintiff's assertion, the ALJ determined that plaintiff's capability to read and write a bit in English, watch and understand

14

television in English, and help her son with his first grade homework is inconsistent with the functional restriction of inability to communicate in English. (AR 19.)  Even if plaintiff were found illiterate in English, such finding does not prevent her to perform her past relevant work as a cannery packer *as performed*.  Plaintiff fails to demonstrate ALJ error in the ALJ's residual functional capacity assessment.

**Past Relevant Work**

Plaintiff criticizes the ALJ's finding that plaintiff is able to perform her past relevant work.  At step four of the five-step disability evaluation, the ALJ determines whether impairments preclude claimant to perform past relevant work.  At step four, claimants have the burden to show that they are unable to perform their past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).  Although the burden of proof lies with the claimant at step four, the ALJ has a duty to make the requisite factual findings to support his conclusion. Social Security Ruling ("SSR") 82-62; *Pinto*, 249 F.3d at 844.

To perform past relevant work, a claimant must be able to perform:

1.      The actual functional demands and job duties of a particular past relevant job; or

2.      The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

SSR 82-61; *Pinto*, 249 F.3d at 844.  Specific findings are required as to a claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. SSR 82- 62.

Plaintiff argues the vocational expert Ms. Chandler's testimony is of little significance because the ALJ did not present plaintiff's postural restrictions to her.  Such argument lacks merit because Ms. Chandler neither received an ALJ hypothetical concerning plaintiff's residual functional capacity nor testified to the corresponding job availability in the national economy or plaintiff's ability to perform her past relevant work.  Ms. Chandler's testimony was limited to the exertional level of past relevant work *as performed* based on plaintiff's testimony on each previous job's demands.  (AR 436.)  *See, generally*, *Pinto*, 249 F.3d at 845 ("We have never required explicit findings at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed.")

Further, at step four, plaintiff bears the burden to show that she can no longer perform past

15

relevant work, unlike step five, where the Commissioner must show, in light of a claimant's residual functional capacity, that the claimant is able to engage in other substantial gainful work that exists in the national economy. *See Pinto,* 249 F.3d at 844; *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). Plaintiff fails to show she is unable to perform her past relevant work as a cannery packer. In plaintiff's May 13, 2002 work history report, she noted that as a cannery packer, she was required to lift 20-pound boxes of peaches, cut peaches in half, and place them on a belt, with a typical day including standing, and either handling, grabbing or grasping big objects for eight hours and walking for an hour. (AR 100, 102.) At the January 7, 2004 ALJ hearing, plaintiff testified she worked in a packing house, where she was required to stand, load and push 15-to-20 pound boxes, but was not required to lift anything. (AR 433-434.) There is nothing in plaintiff's testimony inconsistent with either light work or the imposed postural restrictions. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b). Here, plaintiff has not met her burden to show that she is unable to perform past relevant work.

### Plaintiff's Credibility

Plaintiff challenges the ALJ's evaluation of her credibility and argues that the ALJ rejected her testimony solely because "the objective evidence was unsupportive." The Commissioner responds that the ALJ "made sufficiently [a] specific finding to discount [p]laintiff's testimony."

"Credibility determinations are the province of the ALJ." *Fair*, 885 F.2d at 604; *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988). "An ALJ cannot be required to believe every allegation of disabling pain." *Fair*, 885 F.2d at 603. An ALJ "may disregard unsupported, self-serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995).

A claimant bears an initial burden to "produce objective medical evidence of underlying 'impairment,' and must show that the impairment, or a combination of impairments, 'could reasonably be expected to produce pain or other symptoms.'" *Baston v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). If a claimant satisfies such initial burden and "if the ALJ's credibility analysis of the claimant's testimony shows no malingering, then the ALJ may reject the claimant's testimony about severity of symptoms with 'specific findings stating clear and convincing reasons for doing so.'" *Baston*, 359 F.3d at 1196 (quoting *Smolen*, 80 F.3d at 1284.) "If the ALJ finds that the claimant's testimony as to the severity of

1  her pain and impairments is unreliable, the ALJ must make a credibility determination with findings

2  sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's

3  testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

4  　　　　If an ALJ's credibility finding is supported by substantial evidence in the record, a reviewing

5  court may not engage in second-guessing. *Thomas*, 278 F.3d at 959.  A reviewing court will not reverse

6  an ALJ's credibility determinations "based on contradictory or ambiguous evidence."  *Johnson v.*

7  *Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)).

8  "So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may

9  discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character

10  evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).  Moreover, "the ALJ is entitled to

11  draw inferences 'logically flowing from the evidence.'" *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir.

12  1996) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

13  　　　　In *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), the Ninth Circuit commented:

14  　　In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness,
    inconsistencies either in his testimony or between his testimony and his conduct, his

15  　　daily activities, his work record, and testimony from physicians and third parties
    concerning the nature, severity, and effect of the symptoms of which he complains.

16  　　*Smolen*, 80 F.3d at 1284; *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (quoting
    *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995)); 20 C.F.R. § 404.1529(c).  An

17  　　ALJ's finding that a claimant generally lacked credibility is permissible basis to reject
    excess pain testimony.

18

19  *See also* SSR 96-7p.[2]

20  　　　　An ALJ may consider the following factors to determine the credibility of a claimant's

21  allegations of disabling pain:

22  　　　　1.　　The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

23  　　　　2.　　Precipitating and aggravating factors (e.g., movement, activity, environmental

24

25  　　　　[2]　　Social Security Ruling 96-7p sets out factors to assess a claimant's credibility: (1)  claimant's daily

26  activities; (2) location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate
    and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication the claimant takes or has

27  taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief
    of pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other

28  symptoms (e.g., lying flat on his or her back, standing 15 to 20 minutes every hour, or sleeping on a board); and (7) any other
    factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

conditions);

3.      Type, dosage, effectiveness, and adverse side-effects of pain medication;

4.      Treatment, other than medication, for pain relief;

5.      Functional restrictions;

6.      Claimant's daily activities;

7.      Unexplained, or inadequately explained, failure to seek treatment or to follow up a prescribed course of treatment; and

8.      Ordinary techniques to test a claimant's credibility.

*Bunnell*, 947 F.2d at 346; *see* 20 C.F.R. §§ 404.1529, 416.929.

As a reminder, the ALJ found that plaintiff's allegations "were generally credible, but not to the extent of establishing disability. (AR 19.) After assessing plaintiff's medical treatment and testimony, the ALJ thoroughly addressed plaintiff's credibility (AR 18-19):

> At the hearing, claimant's allegations were generally not credible, to the extent they failed to establish disability. She testified she takes medication for dizziness only when she becomes dizzy, although she was advised to take it regularly. She testified she understands, reads, and writes a little English. She has chest pain once every two to three months. The claimant further testified she helps her son with his homework in the first grade, and watches TV in English such as "Cops". The claimant further testified she cooks for herself and washes dishes, and cooks for the family two times a day. She does some laundry, although she does no shopping. The claimant further testified that she is not able to get around like she used to.
>
> . . .
>
> In evaluating a claimant's credibility, other information is considered in conjunction with the medical record (SSR 96-7p). The claimant testified at the hearing that she stopped working at the cannery/packing house because the company closed down, and apparently not due to disability. It is noteworthy the claimant testified at the hearing that she only takes her medication for dizziness when she becomes dizzy rather than on a regular basis as she was advised to do by her physician. She further testified that she is capable of performing limited household chores, such as washing dishes, cooking, and doing the laundry, although still not able to perform activities she had in the past. She further testified that she was capable of helping her son with his first grade homework. Such activities are inconsistent with disability, and consistent with the ability to perform limited work activities. The claimant further testified that she was capable of reading and writing a little bit in English, watches and apparently understands television conversations in English, indicating she has the ability to communicate in English. Therefore based on the medical and non-medical evidence, it is the finding of the Administrative Law Judge that the claimant's allegations of disability were not fully credible. Objective findings fail to support her alleged severity.
> (AR 18-19.)

Here, the ALJ provided specific findings and clear and convincing reasons to discredit plaintiff. The ALJ noted that plaintiff left her job at the cannery/packing house after the company closed down, and apparently not due to disability. (AR 433.)  The ALJ properly considered plaintiff's failure to follow a prescribed course of treatment and noted that plaintiff only takes her medication for dizziness when she becomes dizzy, rather than as advised by her physician. (AR 421-422); *see Bunnell*, 947 F.2d at 346. The ALJ took into account the onset and frequency of the pain by noting that plaintiff has chest pain once every two to three months. (AR 424-425); *see Bunnell,* 947 F.2d at 346.  The ALJ determined that plaintiff's daily activities, including washing dishes, cooking, and doing the laundry, are inconsistent with plaintiff's asserted functional restrictions. (AR 419, 428-429); *see Bunnell,* 947 F.2d at 346. Plaintiff fails to substantiate her complaint that the ALJ failed "to give adequate reasons for rejecting credibility."

The record reveals further grounds to question plaintiff's credibility and including the conclusions of Dr. Reddy and Dr. Glasser that plaintiff is capable to perform a range of medium duty work. (AR 340, 347, 345); *see Moncada*, 60 F.3d at 524 (physician opinion that claimant could perform sedentary work is a specific reason to discredit excessive pain testimony).  In February 2002, Dr. Boran noted the echocardiogram indicated "a rheumatic mitral valve with only mild mitral stenosis and mild mitral regurgitation" and the previous commissurotomy "appears to be holding up nicely." (AR 315, 316.)  The October 2001 x-rays revealed nondisplaced fractures of plaintiff's pelvis had healed. (AR 351.)  An August 2003 chest x-ray was "normal." (AR 350.)  Four September 2003 x-rays of plaintiff's lower back indicated "[m]inimal right lateral scoliosis" but were "otherwise normal." (AR 349); *see Drouin v. Sullivan*, 966 F.2d 1255, 1258-1259 (9th Cir. 1991) (medical records indicated physical impairments are not necessarily associated with pain).  Dr. Rios noted that despite deformities of plaintiff's left index finger, grip strength was "strong and normal" and "adequate." (AR 334.)  Dr. Rios observed that plaintiff "moves about the room with ease" and her "gait pattern does not appear to be significantly compromised." (AR 333, 335.)  Plaintiff fails to demonstrate an impairment or combination of impairments which could reasonably be expected to produce pain and limitations to the degree which she claims.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (objective medical evidence "is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.")

1    Substantial evidence supports the ALJ's specific findings on plaintiff's credibility to preclude this Court

2    to second guess the ALJ.

3    **CONCLUSION AND ORDER**

4    For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ

5    properly concluded plaintiff is not disabled.  This Court further finds that the ALJ's decision is

6    supported by substantial evidence in the record as a whole and based on proper legal standards.

7    Accordingly, this Court RECOMMENDS to:

8        1.    DENY plaintiff's request to reverse the Commissioner's decision to deny plaintiff SSI

9              or to remand for further proceedings; and

10       2.    DIRECT this Court's clerk to enter judgment in favor of defendant Jo Anne B. Barnhart,

11             Commissioner of Social Security, and against plaintiff Asuncion Rodriguez and to close

12             this action.

13   These findings and recommendations are submitted to the district judge assigned to this action,

14   pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304.  No later than August 15,

15   2006, any party may file written objections to these findings and recommendations with the Court and

16   serve a copy on all parties and the magistrate judge and otherwise in compliance with this Court's Local

17   Rule 72-304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and

18   Recommendations."  Responses to objections shall be filed and served no later than August 28, 2006

19   and otherwise in compliance with this Court's Local Rule 72-304(d).  A copy of the responses shall be

20   served on the magistrate judge.  The district judge will review the magistrate judge's findings and

21   recommendations, pursuant to 28 U.S.C. § 636(b)(1)(c).  The parties are advised that failure to file

22   objections within the specified time may waive the right to appeal the district judge's order.  *Martinez*

23   *v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

24   IT IS SO ORDERED.

25   **Dated:   August 3, 2006**                    **/s/ Lawrence J. O'Neill**
     66h44d                                         UNITED STATES MAGISTRATE JUDGE

26

27

28